Harold WILLIAMS and
CENTRAL UTILITIES CONSTRUCTORS, INC. *v.*
JOYNER-CRANFORD-BURKE CONSTRUCTION CO.
and UNITED PACIFIC INSURANCE CO.

84-242                                              685 S.W.2d 503

Supreme Court of Arkansas
Opinion delivered March 4, 1985

*Rose Law Firm, A Professional Association,* by: *Richard T. Donovan,* for appellant.

*Friday, Eldredge & Clark,* by: *Michael G. Smith,* for appellee.

ROBERT H. DUDLEY, Justice. Appellants, Central Utilities Constructors, Inc., a construction company, and Harold Williams, its primary shareholder, filed suit alleging that appellees, Joyner-Cranford-Burke Construction Co., and United Pacific Insurance Company, its bonding company, refused to pay appellant Central the $27,999.98 balance due on its written subcontract for construction of sewer laterals in the Mabelvale-Alexander Sewer Improvement District #142. Appellants further alleged that appellees' conduct and failure to act in a commercially reasonable manner was so egregious that appellees were guilty of the tort of bad faith. Appellees contended that appellants could not bring an action in either law or equity for the breach of any contract related to the District since neither appellant was licensed as a contractor pursuant to Ark. Stat. Ann. § 71-701 et seq. (Repl. 1979), the contractor's licensing act. Section 71-713 provides generally that contractors who undertake construction jobs, excluding residences, with a cost to the contractor of $20,000.00 or more must be licensed to do business by the State Licensing Board for Contractors. Failure to obtain such a license constitutes a misdemeanor, and the statute additionally prohibits the contractor from suing ". . . either at law or in equity to enforce any provision of a contract entered into . . ."

Appellees further answered that appellants failed to

state a claim upon which relief could be granted for the alleged tort of bad faith non-payment.

Appellants subsequently amended their complaint to plead that they were not seeking reimbursement for work performed under the original $500,000.00 written contract but for work performed pursuant to 16 separate and distinct oral contracts for the construction of the laterals, none of which exceeded $20,000.00. The trial court granted summary judgment in favor of both appellees. We affirm. Jurisdiction is in this court pursuant to Rule 29(1)(c) of the Rules of the Supreme Court.

The affidavits submitted by the appellees in support of their motion for Summary Judgment establish the following:

(1) Neither Harold Williams nor Central Utilities Constructors, Inc. was a licensed contractor with the Arkansas Contractors Licensing Board pursuant to the requirements of Ark. Stat. Ann. § 71-701 at the time the written subcontract with Joyner-Cranford-Burke was executed.

(2) The total approximate price for the job to be completed under the subcontract by Central Utilities was $500,000.00.

(3) The laterals set out in the plaintiffs' amended complaint were all a part of the Sewer Improvement District No. 142 project, and these laterals were add-on items to the original subcontract. The laterals were created by change orders issued to Joyner-Cranford-Burke from the engineers on the project and in some cases they replaced the laterals listed on the written contract between Joyner-Cranford-Burke and Utilities.

(4) All payments to Central Utilities for the work performed by it on Sewer Improvement District No. 142 were governed by the written contract, and the terms of performance of the extra work were governed wholly by the written subcontract.

In response, Appellant Harold Williams filed an affidavit which stated:

(1) The contracts referred to in my Amended Complaint were sixteen separate and distinct oral contracts. Each lateral listed in my Amended Complaint constitutes a separate and distinct oral contract entered into between myself and Joyner-Cranford-Burke.

The appellants contend that their amended complaint coupled with Williams's affidavit raise genuine issues of material fact. We find the argument without merit.

Even though affidavits for summary judgment are to be construed against the movant, *Leigh Winham, Inc.* v. *Reynolds Ins. Agency,* 279 Ark. 317, 651 S.W.2d 74 (1983), once the moving party makes a prima facie showing of entitlement to a summary judgment, the responding party must discard the cloak of formal allegations and meet with proof by showing a genuine issue as to a material fact. *Hughes Western World, Inc.* v. *Westmoor Mfg.,* 269 Ark. 300, 601 S.W.2d 826 (1980). Our summary judgment rule, ARCP Rule 56, requires that proof offered to meet a properly supported motion for summary judgment "must set forth *specific facts* showing that there is a genuine issue for trial." *Turner* v. *Baptist Medical Center,* 275 Ark. 424, 631 S.W.2d 275 (1982). Affidavits which consist merely of general denials, without any statement of specific facts, are insufficient. *Id.* at 427.

In the case at bar, it is undisputed that appellants were not licensed; that their overall subcontract called for payment of $500,000.00; and that all laterals were a part of the Improvement District No. 142 project. By affidavit the appellees swore that these laterals were add-on items to the original contract and were caused by change orders from the engineers and that the terms of performance on these added laterals were governed wholly by the written subcontract. To those specific facts, the appellants merely gave a conclusory affidavit that each lateral constituted a separate and distinct oral contract. The appellants failed to meet proof with proof. They did not allege that the extra laterals were

negotiated separately, nor that there was anything separate and distinct about these laterals, nor did they deny that the terms of performance for the laterals were governed by the original contract.

The summary judgment must be affirmed for another reason. The appellants offer no facts to dispute appellees' statement that all of the laterals were a part of the Improvement District No. 142 project. The statute applies when "the cost of the work to be done" is $20,000.00 or more. The "cost of the work to be done" by appellant on the project was $500,000.00, and the statute cannot be circumvented by dividing the project into many contracts of less than $20,000.00. See *Cochran* v. *Ozark Country Club, Inc.*, 339 So.2d 1023 (Ala. 1976). The word "cost" refers to the aggregate amount which a contractor is to receive on any one project. The trial court correctly granted the motion for summary judgment on the claim for breach of contract.

The appellants' complaint also contained a count for the tort of bad faith. The trial court ruled that the claim failed to state facts upon which relief could be granted. Appellants ask us to problematically decide whether the contractors licensing statute precludes an unlicensed contractor from bringing a claim sounding in tort. We need not decide that issue, for this claim does not state a cause of action for the tort of bad faith, no matter how we interpret the statute.

The count is as follows:

That due to JCB's and UPIC's [Appellees] willful conduct and failure to act in a commercially reasonable manner the Plaintiff, Harold Williams, has been irreparably harmed, in that he has been psychologically injured by the infliction of mental distress and his business reputation, as well as the business reputation of CUC, has been damaged beyond repair and as a result of these actions of JCB and UPIC he has been forced to file personal bankruptcy pursuant to Chapter 11 of Title XI, United States Code, on March 21, 1983. (R. 3)

It will be seen that the count does not assert any *affirmative* action on the part of the appellees which would constitute the tort of bad faith. Under our rules of civil procedure we do not recognize "notice pleadings," we recognize "fact pleadings." ARCP Rule 8; *Dunlap* v. *McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984). In notice form the complaint states that it is for willful conduct. It fails to state any facts from which one could conclude that appellees engaged in dishonest, malicious, or oppressive conduct in order to avoid their liability. The trial court correctly ruled that the tort count for bad faith failed to state facts upon which relief can be granted.

The appellants next contend that the contractors licensing statute is intended to protect the public, not contractors, and it should not be used as a shield by a contractor to avoid an otherwise valid obligation to a subcontractor. We have examined the statute in light of appellants' argument, but the statute is so clear that to quote it in the pertinent part is to fully answer the argument. "No action may be brought either at law or in equity to enforce any provision of *any* contract entered into in violation of this act." Ark. Stat. Ann. § 71-713 (Repl. 1979). Unfortunately for the appellants, the statute is a penal one, and, at times, harsh results flow from construction of penal statutes.

Affirmed.